# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MONTRELL C. HOLMES, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:19-cv-3290-DDN |
| LIEUTENANT HAWTHORNE, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon "Defendants Motion to Dismiss Plaintiff's Second Amended Complaint," filed by defendants John Hawthorne, Korey Kyles, Tasha Kupihea, Chelsea Dowell, William Griffin, Danielle Beiter and Johnny Holmes (collectively "defendants"). (ECF No. 31). Plaintiff has not responded to the motion, and the time for doing so has passed. Having considered the motion and defendants' arguments in support, the Court has determined to deny the motion, and direct the defendants to answer the second amended complaint.

### Background

Self-represented plaintiff Montrell Holmes is a Missouri State prisoner who is currently in custody at the Boonville Correctional Center in Boonville, Missouri. The events giving rise to the claims in the second amended complaint occurred while plaintiff was a resident at the Transition Center of St. Louis (TCSL). The TCSL is a Missouri Department of Corrections facility that provides housing and programming to people under community supervision.[1]

In the second amended complaint, plaintiff alleges as follows. On September 3, 2019, plaintiff was in the C-Unit bathroom cutting another offender's hair when he lost consciousness.

---

[1] https://doc.mo.gov/programs/missouri-reentry-process/transition-center (last visited April 15, 2021).

He awoke to physical abuse from Hawthrone, Holmes, Beiter, and Does 1 and 2. The abuse included punching and kicking, banging plaintiff's head on the floor, twisting his arms, stepping on his hands, and bending his neck. Plaintiff suffered significant injuries. In addition to alleging he was unconscious, plaintiff states he was posing no threat at the time.

Griffin withheld necessary supplies from plaintiff to retaliate against him for complaining about the abuse and/or to prevent him from reporting it, and denied plaintiff access to the grievance procedure. When plaintiff was talking to a fellow inmate about what happened, Dowell told him: "keep talking about what we did to your ass, I'm going to write your ass up for threats on an inmate." (ECF No. 22 at 13). A violation report was filed against plaintiff, and he and Kyles met to discuss it. Plaintiff suggested the report was fabricated, and told Kyles he had a report containing conflicting information in his cell. Kupihea confiscated the conflicting report to conceal the fabrication. Kyles asked plaintiff whether he wanted to have a hearing concerning the violation or waive that right and return to prison, and plaintiff chose to have a hearing. However, Kyles forged plaintiff's initials on a document, and plaintiff was returned to prison – specifically to the Eastern Reception, Diagnostic and Correctional Center ("ERDCC") – without a hearing.

Once at the ERDCC, plaintiff filed a grievance to claim he "was physically assaulted by staff and denied access to the Grievance procedure as well as wrongfully sent back to the Department of Correction. Also, how my non-compliance was intentionally stolen while I was being teamed by Korey Kyles so I wouldn't have any proof against their wrongdoing." *Id.* at 18. Plaintiff avers he received a response stating he "waited to[o] long to file in spite of the Department of Corrections not having the same Grievance procedure as the Transitional Center St. Louis." *Id.* Plaintiff avers he appealed the denial of his Grievance, but believes he did not receive a response.

2

In the instant motion, defendants seek the dismissal of this action due to plaintiff's failure to exhaust administrative remedies before bringing this lawsuit. In support, defendants argue that in order to exhaust administrative remedies, an inmate must receive a response to his grievance appeal. Noting the above averments from the second amended complaint, defendants conclude that plaintiff "chose not to appeal the decision he allegedly received" and failed to exhaust administrative remedies because he did not receive a response to his grievance appeal. (ECF No. 31 at 7). Defendants also argue that plaintiff failed to establish, as a matter of law, that the grievance procedure was unavailable to him.

Next, defendants contend plaintiff "failed to plead facts to sufficiently establish retaliation by Defendants" because he failed to allege any defendant took adverse action against him which would chill a person of ordinary firmness from continuing to complain of abuse. *Id.* at 8. Defendants argue Dowell delivered the alleged threat while plaintiff was speaking to another inmate, which is not protected activity. Defendants characterize plaintiff's allegations that Kyles, Griffen, Dowell and Kupihea "transferred Plaintiff away from TCSTL in retaliation for reporting other Defendants' alleged abuse" as "illogical and conclusory," and that such "transfer" does not meet the standard of an adverse action that would chill a person of ordinary firmness from using the grievance procedure, as plaintiff was free to file a grievance at the ERDCC. *Id.* at 9.

Defendants also contend that plaintiff has failed to allege facts to state a plausible excessive force claim. In support, defendants argue that plaintiff failed to allege malicious and sadistic intent on the part of Hawthorne, Holmes and Beiter when they beat him as he lay unconscious on the floor. Defendants criticize plaintiff's allegation that he was posing no threat at the time as conclusory, and they accuse plaintiff of being "purposefully vague" about his actions immediately prior to losing consciousness "in effort to avoid discussion of Plaintiff's behavior justifying any

force used." *Id.* at 11. Defendants offer their own version of events, and assert that "[a]n allegation that Defendants would use force against Plaintiff without reason defies credibility." *Id.* Finally, defendants contend plaintiff's allegations of a conspiracy are conclusory and illogical, and he has not identified the object of the conspiracy, alleged a meeting of the minds between the defendants, alleged wrongful conduct, and identified damages. They also claim entitlement to qualified immunity.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss, "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). When ruling on a motion to dismiss, the Court must assume the veracity of the factual allegations in the complaint, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and draw all reasonable inferences in favor of the non-moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). The Court disregards legal conclusions, and reviews the factual allegations for facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

**Discussion**

As defendants correctly assert, "[a]n inmate may not sue under federal law until exhausting available administrative remedies." *East v. Minnehaha County,* 986 F.3d 816, 821 (8th Cir. 2021). However, "[a]dministrative remedies are not available if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."" *Id.* (quoting *Ross v. Blake,* — U.S. —, 136 S. Ct. 1850, 1860 (2016)). "The inmate then is not required to exhaust his claims before suing in federal court." *Id.*

Here, plaintiff has sufficiently alleged he met his obligations concerning the grievance process once at the ERDCC. He alleges he filed a grievance and appealed the denial thereof, but believes he did not receive a response. In accusing plaintiff of failing to exhaust administrative remedies, defendants focus upon plaintiff's non-receipt of a grievance appeal denial. However, defendants do not allege that plaintiff initiated this action while the grievance process was ongoing, and this Court cannot conclude at this stage of this litigation that any failure to receive a denial of the grievance appeal is attributable to plaintiff's failure to comply with the grievance procedures. "Inmates are excused from exhausting remedies 'when officials have prevented prisoners from utilizing the procedures, or when officials themselves have failed to comply with the grievance procedures.'" *Porter v. Sturm,* 781 F.3d 448, 452 (8th Cir. 2015) (quoting *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005)).

Additionally, plaintiff has sufficiently alleged that administrative remedies were unavailable to him while he resided at the TCSL. Plaintiff alleges necessary supplies were withheld from him in retaliation for talking about the abuse and/or to prevent him from reporting it, and he alleged Dowell threatened him with a serious infraction charge if he continued talking about the abuse. At this stage of this litigation, plaintiff's allegations are sufficient to support the inference that he understood Dowell to threaten him with a serious infraction charge if he filed a grievance. A threat "need not explicitly reference the grievance system in order to deter a reasonable inmate from filing a grievance." *East,* 986 F.3d at 821 (internal quotation omitted).

Defendants also argue that plaintiff failed to state a plausible retaliation claim because he failed to allege any defendant took adverse action against him which would chill a person of ordinary firmness from continuing to complain of abuse. Defendants contend Dowell made the alleged threat while plaintiff was speaking to another inmate, which is not protected activity.

5

However, as discussed above, plaintiff has sufficiently alleged the defendants engaged in conduct that would chill a person of ordinary firmness from reporting abuse, and a reasonable inmate could have interpreted Dowell's threat to relate to talking about the abuse in any manner, including grieving it. Finally, defendants attempt to characterize plaintiff's allegations as relating to being "transferred" from the TCSL and therefore "illogical and conclusory." (ECF No. 31 at 9). However, plaintiff does not allege he was merely transferred; he alleges he was sent back to prison.

Defendants' arguments concerning plaintiff's excessive force claim are meritless. Defendants argue plaintiff's "remarks that he was not a threat at the time the force was used, are conclusory," and that he is "purposefully and conveniently vague regarding Plaintiff's actions at the time in an effort to avoid discussion of Plaintiff's behavior justifying any force used." *Id.* at 11. However, in addition to stating he was posing no threat at the time force was used, plaintiff alleged he lost consciousness and awoke to a beating from officers. Plaintiff's allegations are not conclusory, and they provide no basis to conclude that the officers used force in a good-faith effort to maintain or restore discipline. Defendants further contend plaintiff is vague about his own actions before losing consciousness, and they suggest plaintiff's conduct justified the use of force. However, plaintiff's conduct prior to losing consciousness is irrelevant to the inquiry of whether plaintiff has sufficiently alleged that the defendants used excessive force upon encountering him while he was unconscious.

Defendants also argue that plaintiff has offered only conclusory allegations of a conspiracy, inasmuch as he has not identified the object of the conspiracy, alleged a meeting of the minds and wrongful conduct by defendants, and identified an injury. However, taking plaintiff's factual allegations as true, he has alleged the defendants acted collectively to conceal the abuse and prevent plaintiff from reporting it, and then took action to cause him to be returned to prison.

6

Throughout the motion, defendants challenge the credibility of plaintiff's allegations. However, the credibility of plaintiff's factual allegations are not at issue here because "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly,* 550 U.S. at 556 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). This Court must accept plaintiff's allegations as true unless they are implausible. *Iqbal,* 556 U.S. at 679. The Court cannot reach a conclusion of implausibility at this stage and procedural posture of the case. Finally, the Court concludes that plaintiff has sufficiently alleged the violation of a constitutional right, and the defendants therefore cannot establish entitlement to qualified immunity at this time.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that, within fourteen (14) days of the date of this Order, defendants shall answer the second amended complaint.

Dated this  16th  day of April, 2021.

                                                   /s/   David D. Noce
                                           DAVID D. NOCE
                                           UNITED STATES MAGISTRATE JUDGE